**Dated: August 21, 2018**

**The following is ORDERED:**



**TOM R. CORNISH**
**UNITED STATES BANKRUPTCY JUDGE**

___

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF OKLAHOMA

**IN RE:**

**HAMMERS, BUCK LEON**             **Case No. 18-80602-TRC**
                                                               **Chapter 11**
                   **Debtor.**

### ORDER GRANTING MOTION FOR RELIEF FROM AUTOMATIC STAY AND ABANDONMENT

Before the Court is Creditor National Livestock Credit Corporation's Motion for Relief form Automatic Stay and/or Abandonment of Property (Docket Entry 14), Creditor First United Bank and Trust Co.'s Limited Response (Docket Entry 31), and Debtor's Objection (Docket Entry 32). The Court held an evidentiary hearing on this matter on August 8, 2018. After a review of the record, and weighing the relevant factors, the Court herein enters its findings of fact and conclusions of law, holding that relief from the stay should be granted and the subject real and personal property abandoned.

**Findings of Fact**

Debtor filed this individual chapter 11 case on June 5, 2018. No trustee has been appointed. Prior to filing this case, the District Court of Bryan County, Oklahoma, CJ-2017-142, entered *in rem* and *in personam* judgments against Debtor, and an *in rem* only judgment against his ex-wife, Jody Hammers, on creditor First United Bank and Trust Co.'s ("First United") foreclosure action. First United held the first mortgage on Debtor's and Jody Hammer's real estate in Bryan County, a lien on all of Debtor's equipment, additions, replacements and substitutions, and proceeds, and a purchase money security interest in a John Deere 6420 4x4. Movant Creditor National Livestock Credit Corp. ("NLCC") held a second mortgage on a portion of Debtor and Jody's real estate. First United's judgment on separate notes as of September 5, 2017, is as follows: (i) $297,856.26 plus interest of 6% per annum; (ii) $188,771.80 plus interest of 4.5% per annum; and (iii) $84,035.25 plus interest of 6% per annum. The judgment also awarded First United late fees and postjudgment interest. First United was also awarded a judgment against Debtor on the equipment and John Deere 4x4 for $46,854.13 plus interest of 5.7% per annum. Movant NLCC was awarded judgment of $558,298.75 plus interest after December 31, 2017 at $113.21 per day until paid, and its fees, costs and attorney fees. The state court ordered foreclosure of First United's first mortgage on all of the Bryan County real estate. It also ordered foreclosure on NLCC's second mortgage against the same real estate, with the exception of Jody's half-interest in a portion of that real estate known as the "House and Five Acres," address of RR1, Box 667, Caddo, OK. Debtor was also ordered to turn over possession of collateral to First United and/or NLCC.

Sheriff's appraisers appraised the House and Five Acres at $207,500, and the remaining real estate in Bryan County at $648,500. On May 11, 2018, the Bryan County Sheriff conducted

a sale of the properties. NLCC purchased the real estate for $750,000 and the House and Five Acres for $195,000. The hearing to confirm the Sheriff's Sale was scheduled for June 5, 2018. Debtor filed bankruptcy that morning.

NLCC filed its motion to lift the stay on June 11, 2018, alleging that its claim combined with First United's exceeds the value of Debtor's real estate and personal property. NLCC argues that Debtor has no equity, that its position is being eroded as First United's judgment accrues interest, that some of the collateral securing Debtor's notes has disappeared, and that its costs are increasing as it has force-placed insurance on the home due to Debtor's failure to insure. NLCC estimated that Debtor's remaining equipment is valued at $92,000. NLCC is maintaining the insurance on the house and outbuildings, and believes that the roof of the house was damaged but not repaired. Debtor did not dispute the claim that some collateral is missing, nor that the house is not being insured by Debtor. However, Debtor states NLCC and First United are adequately protected by his real estate and mineral interests. He wants time to present a plan of liquidation that will maximize the value of his assets for his creditors.

The focus of the hearing was on the value of Debtor's Bryan County real estate mortgaged to First United and NLCC, and possible mineral interests. Roger Spears, a state-certified general appraiser, of Southwest Valuation Service, testified on behalf of NLCC. His written appraisals with photographs of the subject properties were submitted to the Court. As of August 2, 2018, Spears appraised Debtor and Jody's house at $290,000. Spear's appraisal includes this description of the condition of the house: "The property has had adequate maintenance but some replacement shingles doe (*sic*) not match and some floor cover is in need of replacement. Overall condition is average to good." Spears stated that his appraisal did not include costs of selling the home which typically average 6% of the purchase price. Spears also

appraised a tract containing 408.24 acres. The highest and best use of this land was considered to be agricultural, specifically pasture land. Using the Cost Approach, Spears appraised this land at $916,000, buildings at $39,500, for a total value of $955,000. Using the Sales Comparison Approach, Spears arrived at a value for the land and buildings of $960,000. These appraisals were of surface rights only, with $0 value included for minerals. Spears was not provided a title opinion on these properties so he was unable to evaluate Debtor's claim that he owns the mineral rights in 80 acres of this tract. The only evidence of ownership Spears reviewed was the deed. Spears admitted that if Debtor does own the mineral rights, the value of the real estate may possibly increase.

Larry Adams testified on Debtor's behalf. Adams is a geologist and oil and gas consultant who formerly worked for the Oklahoma Corporation Commission. He is familiar with oil and gas drilling in the state of Oklahoma. He stated that mineral interests are much more valuable than surface rights. The highest value he is aware of for mineral rights in Oklahoma is in Blaine County where some interests have sold for $30,000 an acre. Adams is aware of some horizontal drilling activity for gas in Atoka County. Debtor's property abuts Atoka County. To support his estimate of the potential value of mineral interests in this area, Adams submitted an exhibit he obtained from the Oklahoma Corporation Commission. The exhibit is titled "Application for Tax Rebate" which Adams explained is an intent to drill in Atoka County, filed in December of 2016 by Newfield Exploration Midcontinent Inc., the operator of wells in Atoka County. The application includes information from 2014 reflecting significant gas production in wells Adams estimated to be located approximately 15 miles from Debtor's property. Adams estimated that mineral interests purchased in an unproven area in Atoka County would be worth at least $1,500 to $2,000 or more per acre. He described Debtor's

claimed mineral interest as unproven and undeveloped. He also submitted an exhibit obtained from the Oklahoma Corporation Commission regarding existing wells located more closely to Debtor's property than the Newfield wells. It indicated significant production of natural gas from those wells, making those mineral interests very valuable.

Debtor's Schedule A lists 80 acres of mineral interests in Bryan County, with a value of $400,000. NLCC submitted an audio transcription of Debtor's testimony at his 341 meeting, held July 30, 2018. Debtor stated that he based this valuation upon his attorney's knowledge of oil and gas drilling in Oklahoma, not upon a formal appraisal. His mineral interests in Bryan County are not leased, nor does he have any drilling activity on this acreage. He stated that he has the property for sale but has had but one offer to purchase the 429 acres for $1,200,000, which is less than the list price of $1,600,000. The offer was from an unknown person, and Debtor did not regard it as a serious offer because there was no follow up. When asked about the location of the 80 acres of minerals in the 408.24 tract, Debtor stated that he had no idea of the exact location but that when he bought the property he was told there were minerals on it. He provided no evidence to support his claim that he owns mineral interests in Bryan County. Debtor acknowledged in the 341 meeting that he was not insuring the house that he owns with his ex-wife.

First United filed a proof of claim totaling $623,056.18, with the secured portion valued at $605,310.80, and the unsecured portion as $17,745.38. NLCC's proof of claim is in the amount of $595,455.01, including a secured claim of $449,500.00 and an unsecured portion of $145,955.01.

Case 18-80602    Doc 93    Filed 08/21/18    Entered 08/21/18 15:40:44    Desc Main
Document      Page 5 of 9

**Conclusions of Law**

Relief from the automatic stay under 11 U.S.C. § 362(d) may be granted for cause, such as where a creditor's interest in a debtor's property is not adequately protected, where the debtor has no equity in the property, and where the property is not necessary for an effective reorganization. Debtor has made no offer of adequate protection payments, but argues that he has sufficient equity in the property securing these debts. He also argues that the stay should remain in place because he needs this property to effectuate a plan of liquidation.

The proof of claims filed by First United and NLCC total $1,218,511.19. The secured portion of those claims totals $1,054,810.80. By the date of this hearing, NLCC stated that its claim has increased to $605,000 because of costs to insure Debtor's house, and interest is accruing on its judgment.[1] NLCC stated that secured claims currently total $1,200,000. The appraised value of Debtor's portion of the surface rights only of the Bryan County property is $145,000 for the house (one-half of the appraised value of $290,000), and $960,000 for the land and outbuildings, for a total value of $1,105,000. Debtor argues that he has equity in the Bryan County property. He believes that NLCC's appraisal is inaccurate because it fails to include any value for the 80 mineral acres. He believes that the Spears' appraisal should be increased by at least $1500 per mineral acre, which would add $120,000 to the value of his property. This increase provides a sufficient equity cushion to defeat NLCC's motion. He believes that NLCC's motion has been filed too early in this case, giving him no opportunity to investigate and determine if he owns minerals, nor to maximize his assets for the benefit of unsecured creditors. No evidence was presented in support of Debtor's claim that he owns minerals in

---

[1] NLCC's judgment accrues interest at the rate of $113.21 per day.

Bryan County. The only evidence regarding this claim is his statement at the 341 meeting that when he purchased the Bryan County real estate he was told that it included 80 mineral acres.

Movant NLCC has the burden of proving cause to lift the stay. The Court finds that it has met its burden that Debtor has no equity in the property. NLCC provided a current appraisal of the Bryan County real estate that is slightly less than the amount of claims against it. Debtor did not dispute Spears' appraisal. However, he asked the Court to add $120,000 to this value to account for the mineral rights he claims to own. The Court has no reason to doubt Mr. Adams regarding his testimony that mineral rights in a proven area are worth more than surface rights. The Court also accepts his estimates that minerals could be valued at $1500 to $2000 per acre in neighboring Atoka County because there are producing wells located there. However, one of the exhibits he submitted is for production dating in 2014. The Court has no information regarding current drilling and production. Further, Debtor provided neither Adams nor Spears nor this Court any proof that he owns any minerals. Even if he does own minerals, he provided no information regarding their location nor the value of minerals rights in Bryan County. His claim that he owns any minerals is highly speculative. His claim that minerals in Bryan County are valuable because of their proximity to Atoka County wells was unsupported. The Court finds he failed to provide any evidence beyond speculation that the value of the Bryan County property should be increased by at least $120,000. The Court declines to increase the valuation of the house and property beyond Spears' appraised value.

NLCC also argues that the Court should consider the costs associated with selling the property, citing *In re Stratford Hotel Co.,* 119 B.R. 695 (Bankr. E.D. Mo. 1995). Spears' estimated that sales commissions are generally 6% of the purchase price. Even if the commission is negotiated to be less than 6%, this is a significant cost. A 3% commission on the

appraised value of Debtor's interest would be over $30,000. This is a cost that may be considered in determining the value of Debtor's equity, as well as the costs NLCC is currently incurring to insure Debtor's property because of his failure to do so. The Court also notes that Debtor did not dispute NLCC's claim that collateral securing its loan has not been accounted for. The Court therefore finds that based upon Spears' valuation, costs of sale and expenses of NLCC to preserve the property, Debtor has no equity in the property.

Debtor also argues that the stay should remain because this property is necessary for an effective reorganization, although he plans to liquidate his assets rather than reorganize. He believes a liquidation in the bankruptcy process would bring more value for unsecured creditors. To be successful in a claim that the property is necessary for a successful reorganization, a debtor must show that it has "a reasonable possibility of a successful reorganization within a reasonable time." *United States Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.,* 484 U.S. 365, 376 (1985). It is possible that property could be needed in a liquidating chapter 11 case, but Debtor offered no evidence in support of this claim. Debtor failed to offer any plan or information to the Court as to how he can and will maximize that value. He suggests that he should be allowed time to research the ownership and value of the 80 mineral acres. However, he has known for quite some time that the property was in foreclosure and that proof of mineral ownership could enhance its value and marketability. He stated that he has listed the property for sale yet he has done nothing to maximize its value, and has decreased the list price. There is nothing to show a reasonable possibility that he can sell this property and satisfy his creditors within a reasonable amount of time. *See In re Kadlubek Family Revocable Living Trust,* 545 B.R. 660 (Bankr. D.N.M. 2016) (where debtor lacks equity in the property, debtor's estate must be solvent, progress must be made in confirming a plan in the near future, and debtor's plan must

not be a "mere financial pipedream." (*citations omitted*)). Without any plan or timeline, Debtor has failed to show that the stay should remain in place because there is a reasonable expectation of effectuating a confirmable plan of liquidation within a reasonable time.

## Conclusion

The Court finds that stay relief and abandonment is appropriate since Debtor has shown no evidence of equity in this property. Administrative and interest expenses are accruing which erode NLCC's secured position, and collateral has been lost. Additionally, Debtor has offered no evidence or proposal that he can confirm a plan within a reasonable period of time.

IT IS THEREFORE ORDERED THAT National Livestock Credit Corporation's Motion for Relief from the Automatic Stay and Abandonment of Property (Docket Entry 14) is hereby **granted.**

###